Go to the second case before us today, which is Lima or Lyme Go to the second case before us today, which is Lima or Lyme Go. Ye Please stand by for reserve three minutes. Your Honor Second Court in Fairfax city, sets forth a simple, bright line rule governing Rule 68, Office of Judgment. If an offer fails to recite the costs are included or otherwise specify an amount for cost, the district court is obligated to award a plaintiff costs and statutorily authorized fees. This rule is deliberately designed to ensure stability, consistency, and finality in the high stakes world of Rule 68 offers. And to alleviate unfairness to plaintiffs from having to guess about the meaning of an ambiguous offer when deciding whether or not to give up their right to trial. In this case, it is undisputed that the defendant's offer nowhere mentions costs. Yet the district court nevertheless concluded that the defendants subjectively intended their offer to be a lump sum offer. And therefore, precluded plaintiffs from applying for costs and fees. It did mention all claims though, did it not? Yes, Your Honor. And in the complaint, you claimed a right to attorney's fees. Yes, Your Honor, I think- There were four, if I recall. There were four claims in the prayer for relief. Yes, Your Honor, I think that's the principle basis for the district court's decision among its totality of the circumstances. And I think that was incorrect for a number of reasons. First, I think Merrick and its progeny foreclosed that kind of analysis. That is, the analysis that a claim for relief would cover an entitlement to costs or fees. That's because Rule 68 presumes that the judgment includes costs and therefore shifts the burden on the defendant to state clearly and firm costs that fees and costs are foreclosed. And this is because Rule 68 is a unique animal. It puts plaintiffs in a very precarious position, having to decide in a ten day period whether to accept or reject the offer and then proceed to trial under some serious disabilities that the offer presents. And in support of this argument, as far as I can tell, the defendants really only have one case, that's the Blumell case from Florida, that would suggest all claims for relief covers costs. That case has been effectively abrogated by the 11th Circuit, and so that the uniform authority around all courts of appeals require that costs, the term costs, be used. Specifically, the 6th Circuit in McCain and the DC Circuit in Tunison reject the very same argument that the term claim for relief covers costs. There's also, Your Honor, an important line of cases in the 3rd Circuit, that the defendants do not even mention, which conclude that the term all claims, these sort of general all claims releases, do not cover or foreclose a civil rights plaintiff's entitlement to statutorily authorized fees. And if I could, Your Honors, read you the release considered by this court in Torres. That release stated, without limitation, plaintiff specifically releases all claims, charges, or demands asserted or assertable in the pending lawsuit. And all claims, charges, or demands arising from or relating to plaintiff's relationship of any kind with the released parties, including without limitation any rights or claims plaintiff may have had under Title VII of the Civil Rights Act. That release is inarguably broader than the language used in the defendant's offer, particularly because it references the Civil Rights Act, which one could interpret to encompass attorneys. But even there, this court said, even though this general release is broad, it, quote, does not expressly stipulate the plaintiff's claims for attorney's fees is waived, it does not mention fees at all. So we have a very clear bright line rule. And if I may, Your Honor, I think that rule makes some sense as a matter of civil procedure. Our position is a claim for relief is tantamount to a substantive cause of action. And analytically distinct from a prayer for costs. Claim equals count, not prayer for relief. That's right, Your Honor. But isn't it ubiquitous in civil rights cases that a claim under 42 U.S.C. Section 1988 is typically, at least in my experience, listed as a separate count? It's listed not as a substantive count, it's listed in the prayer for relief, what the Seventh Circuit called off count in the Nordby case. And the Supreme Court in this White versus New Hampshire Department of Employment Services case we cite explains that Section 1988 fees are distinct from a substantive cause of action. It doesn't represent compensation. It's actually collateral to and contingent on prevailing on a change in the relationship between the parties. And we cite case law from this circuit that says the fee determination is, quote, not an ingredient of the cause of action. And it is a strict rule, to be sure. But I don't think, by any means, as revealed by the consistency by which the Court of Appeals have followed it, is it a senseless strict rule. It reflects, of course, the unique burdens that this rule places upon plaintiffs. And obligates the defendant to understand how to employ the rule and use its terms clearly before it puts the defendant in this perilous position. Well, you talk about the defendant's perilous position, but you know full well that the defendant wasn't intending to pay you $350,000. So you snatched up the offer hoping to play a gotcha game on them. I respectfully disagree, Your Honor. You thought, in all candor, that they intended to pay you $350,000? First of all, Your Honor, the $350,000 number was not yet established. That's the number that was thrown out in the mediation process. But candidly- There was no discussion of attorney's fees during the mediation process? I find that rather incredulous. No, no. Because in my experience as a trial judge, in fact, in civil rights cases, the attorney's fee compensation component was usually the driver of the settlement or mediation negotiations, not the crux of the plaintiff's claim. Your Honor, I'm glad you brought up the mediation, because I think that reveals why the possibility of this did not include attorney's fees, in our view, was entirely reasonable. That is, the last offer at the mediation was over $100,000, and plaintiffs had rejected an offer of $50,000. I didn't think any of that was on the record, was it? Your Honor, it's stitched together, but I do think- I mean, I thought we're not supposed to consider off-record in that. Your Honor, there is some evidence that the party's been able to stitch together to recount the series of events, but there is not a full record on what the party's subjectively believed, and there's a very good reason for that. Because I think it's very complicated when you start to ask what the party's subjectively intended. And the Third Circuit has, in a number of cases, said we shouldn't make this inquiry, because it's so complicated. I thought that's what the Supreme Court wanted to avoid in Merrick. I think that's precisely right, Your Honor, because, as the Third Circuit has said, why engage in these collateral sets of litigation when observance of a simple formality will suffice, and when everyone knows what the rules are in advance? But, Your Honor- Well, it's not so simple. Go ahead. I'm sorry, but I do want to address this sort of equitable notion you're getting at, Judge Harderman. I think, first, we didn't entirely know what the defendant's intentions were. So, we did, consistent with our obligations, we tried to find out how the court would interpret the offer. Because the offer has to be evaluated at two stages, the point in which it's made, and the point after trial. And it was clear to us that a court interpreting this offer would consider it damages only, not lump sum. And, in our view, it wasn't even a close question when we looked at the case law. And so, it would have been a risk to go to trial when this is a damages only offer, even if the defendants believed it, after the fact, as they revealed, to be lump sum. And to get less than $55,000, we would have done serious harm to our clients. Why? No, if you got $30,000 at trial, that wouldn't have done any harm to your client. Well, we wouldn't have gotten attorney's fees, and we would have had to pay the defendant's cost. I think that's incorrect, because the rule, unless it's changed, the rule has been for many years that all of the attorney's fees that you have accrued up until the date of the offer are thrown into that hopper. And you accrued well over $200,000 in fees up until that point in time. Your Honor, we would have had to, if we got less than the offered amount, say $30,000. We would not have gotten our fees up to that point. What case law says that? That's the operation of the rule. If we reject the offer, we're in this difficult position. Can you cite a case? Because my understanding is the contrary. My understanding is that the defendant had better make that offer promptly before the plaintiff's counsel has incurred fees, because if the case goes to trial, you combine the verdict at trial plus the plaintiff's attorney's fees accrued up until the moment of the offer, you add them together to see whether they exceed what the Rule 68 offer was. If they exceed the Rule 68 offer, you get everything. Right, if we exceed it, we get everything. If we reject the offer and get less, that's when we face the prejudice. And my point is, having accrued over $200,000, you're way past the $55,000 number. But if we had rejected- You get all your attorney's fees, because $1 plus $200,000 is way past $55,000. Your Honor, unless I'm very mistaken, I will reflect during the time before rebuttal. I think if we reject the offer and get less than the offered amount, then we do not get our fees. And that is precisely the difficult position we were in. And I do think, Your Honor, that actually goes to why it actually made sense for the defendant to make an offer at this point that would have entitled us to fees. Because we were just about to start a very fee-laden process. Counsel, can the judge also, can I interrupt you in time? To me, the real issue here is Merrick. And the court began its brief discussion saying, it appearing that a defendant may make a single lump sum to offer to settle a case as long as it is inclusive of costs. I see this issue turning on the, what is the meaning of costs? In the discussion by the district court, the court gave three reasons, essentially, that the 55,000, including all of the plaintiffs, claims for relief. Now, you've been at this and you know what the courts have said. How are the other courts interpreting it? Are they insisting that costs be interpreted as costs, as we understand the technical word for costs? Or does the district court have any authority of other courts of appeals saying an expression like all claims also includes costs? That's what's bothering me in this case. Your Honor, I agree. We have not uncovered, and the defendants have not cited, a single case interpreting claim for relief to be tantamount to costs. Merrick itself requires that a defendant wishing to make a lump sum offer use the term costs. And specifically, we've cited a number of cases in this, including the Sixth and the D.C. Circuit, that have addressed the same argument made by defendant that a claim should be for relief covers off-count costs. And those circuits have concluded, no. It's a strict rule, Your Honor, but it serves an important purpose in this very complicated world of Rule 68. Well, let's just, just bear me out, the language here. If an offer recites that costs are included, or specifies an amount for costs, and a plaintiff accepts the offer, the judgment will necessarily include costs. If the offer does not state that costs are included, in other words, costs are included, again, this is the magic word, costs, an amount for costs is not specified, the court will be obliged by the terms of the rule to include in its judgment an additional amount, which in its discretion, it determines to be sufficient to cover costs. Now, you are going to the legal interpretation and understanding of the word costs. And I think what you have to do is to, your case has to prove that claims as used in this particular judgment could not be considered, reasonably considered as costs. I've taken my time on that because I think that that's the passage that controls this case. And what we have to decide is really a simple thing as to whether all claims are included in the word costs. Yes, Your Honor, I agree that's a central inquiry and I would respectfully refer you to the portions of our brief in which we recount the case law interpreting with some specificity of the term costs. And I'm happy to address those cases now if you'd like, or refer you to them. I just want to say, if we came down with a decision saying that the word claims, as used by the district court, really is synonymous with costs, will this be the first case from a court of appeals so ruling? Absolutely, Your Honor. It would be the first court of appeals case to conclude that claims for relief is tantamount to costs and would arguably be inconsistent with this court's own decision at Ty Van Lee versus University of Pennsylvania. I think that's precisely the issue. In Larrick, the court specifically stated that discusses whether costs in Rule 68 includes attorney's fees awarded under 42 U.S.C. Section 1988, suggesting that the Supreme Court encompassed attorney's fees within costs when it said that you have to ask for costs if you want attorney's fees in addition to the amount of damages set by the jury. Yes, Your Honor, that's very important. In Merrick, the court said costs will include attorney's fees if the underlying substantive statute defines costs and attorney's fees, and that causes some confusion in other cases relying on non-1988 attorney's fees cases. But for our purposes, I think the case before us is simple because the defendants didn't use the term costs, and therefore we're entitled to collect costs and under 1988 fees as a part of costs. In the reasonable discretion of the district court as to the amount of those ultimate costs and fees. Thank you, Your Honor. Thank you. Mr. Lipschutz. Good afternoon. My name is Gary Lipschutz. May it please the Court. My name is Gary Lipschutz. I'm Assistant Corporation Counsel for the City of Newark. This is my first appearance in the Third Circuit. Welcome. Thank you very much. Mr. Azmi's been here a lot. I took that from your earlier comment, Judge. I am representing the City of Newark and Gary McCarthy, who is the City's Police Director, but for the purposes here, they are both under the rubric of the City, and if we refer to them together as the City, we'll understand that. Judge Hardiman, this was a gotcha, just like you said. This was a gotcha from the get-go. Why do you say that? I mean, presumably, Newark reads the Supreme Court cases that are relevant. Well, Judge, first of all, I was the one who prepared the offer of judgment. I was the one who wrote it. I'm equating you with the City of Newark, for good or for bad. That's okay. That may be. I made it exquisitely and exquisitely clear that this offer included costs because I specifically related it to the Second Amendment complaint. It is not the generic all-claims language that is referred to throughout the argument, throughout the briefs. Let us be very clear. It is all claims for relief. It is a very different set of words. This was not the generic all-claims language. The prayer for relief in the complaint asked for consequential damages, putative damages, costs and attorney's fees, and all other types of damages. That was what the demand was in the complaint, the prayer for relief. I wrote this offer of judgment to say all of the plaintiff's claims for relief. And that was a mistake, unfortunately. Under what? Well, if this offer had simply said that you offer $55,000 to settle the case in its entirety, including costs and attorney's fees, that's what Rule 68 requires. I mean, what I think you've got to, speaking only for myself, persuade me of is, first of all, you've got to persuade me that this is a terrible injustice, and then you've got to climb the mountain of persuading me that sometimes judges allow injustice to occur because a bright-line rule, by definition, from time to time will cause injustice when folks don't fully comprehend what the rule requires. And Rule 68 is a trap for the unwary, particularly when we're talking about costs, and we all know that costs under Section 1988, attorney's fees are subsumed within costs. But as far as I can tell, half the federal statutes on the books do not subsume attorney's fees within costs. So some poor lawyer out there is going to write a Rule 68 offer that makes a dollar offer, including costs, and then someone's going to take that offer and then say, ah-ha, now we want our attorney's fees because attorney's fees are not subsumed within costs under the statute. It's a very, very tricky area. So why shouldn't we just enforce the bright-line rule here? Excuse me. I want to disassociate from any suggestion that it's an injustice because what Newark did in this case was terrible, and we're not talking about that. I mean, what about the First Amendment? They have bombarded into this place, took the cameras, took everything. Well, I'm not talking about the underlying facts. I'd like you to persuade me, first of all, why it was a gross injustice for the offer to be accepted and then have them hand you the legal fee bill, and then assuming you can be persuasive on that, please persuade us why we should cast aside the bright-line rule and get into subjective intent, affirm what the trial judge did vis-à-vis subjective intent. Well, there was no subjective intent here. That's another part of this brief, the arguments that are being made of, quote-unquote, subjective intent, and I would like to address that. This was an objective expression in this, in the offer of judgment and in the e-mail that I sent to them, the transmittal. It was an objectively stated intention. There's nothing subjective about it. It said it's the intention. If we're talking objectively, we have to look at the four corners of the Rule 68 offer, and by any stretch, the plain language of this Rule 68 offer does not comport with what Merrick requires. And Merrick is the Supreme Court. I agree. I agree that Merrick's the Supreme Court case, obviously. I think Merrick talks about that if the offer is silent as to costs. I mean, that's what it talks about, and it doesn't mean that you have to use it. I took my time so that I was speaking to your friend, but it was also so that you heard. The question here is whether the word claims, whatever it was in there, is subsumed in the word cost. And I'm going to ask you, sir, because you're much more familiar with this than we are. At the time, were there then or are there now any Court of Appeals case that interpreted Merrick to include the language as costs that you put into this agreement? I didn't find any, no. All right. Neither have I. There were. But I haven't found a case that used language that I used or the city used, the claims for relief, and coupled that with exactly what was asked for in the prayer for relief. It was the only thing in that complaint that was asked for, the prayer for relief. I disagree, Judge, that it was a mistake. I understand why you're talking about a bright-line rule. But when you look at the circumstances of this offer, not even from what is said later, but if you look at what was done at the time, it was an offer that was transmitted. It was an email that said, this is our intention and expectation that if this is accepted, this litigation is over. It's resolved in its entirety. None of the plaintiff's attorneys, not Mr. Barocas, not Mr. Asmey, not Ms. Tully who is sitting here, none of them have ever said they believe this offer does not, was not a lump sum. They never answered that. They didn't answer your question. They didn't answer it before Judge Hochberg. They are using this to just say, oh, it's a bright-line rule. We don't ever have to tell you. It doesn't matter. Well, that's not right, because if they believed, just like Your Honor said. Now we're subjective. No. That's what their subjectiveness is, okay? But if they believed that this was a lump sum offer anyway, which is what we say must be the conclusion, then it doesn't matter if that language is in there. They believed it. They knew it. Why does their subjective belief matter? Because then they're just getting a windfall. And that's the injustice. So their subjective belief matters and your subjective belief doesn't? You said earlier it was an objective test. Well, what I was saying is. I mean, I found that surprising, because my concern with what Judge Hochberg did is it appears to be sort of similar to a parole evidence analysis in a contract case. We've got the four corners of the contract, here the Rule 68 offer, and you've got the judge digging down beneath the plain language of the Rule 68 offer to divine the intent of the parties. Is that not what she did here? Yes, and there's nothing wrong with that, because this was not. There's nothing wrong with that at all, because you have to look at the documents that were presented in the context of when they were presented. And it's not to change the writing, but it's to put light upon what the intentions of the parties are. It's to put the light on it. Here, if you ignore the email, then you are casting it into darkness. You are saying, this email that transmits the offer of judgment, we're not going to look at that. We're not going to consider the light of that. Can we read Merrick faithfully, though, to instruct us to be looking at emails and letters and other correspondence that precede the filing of the Rule 68 offer? Isn't that anathema to what Merrick instructs us to do? Well, it's the transmittal email that goes along with the offer of judgment. I mean, it's not as if it's an email that was done after it was accepted or an affidavit that comes afterwards. Here it is. It's moral evidence. It's a prior statement before the contract is signed. Well, I think it is, if you consider when it was written and for what purpose and the circumstances, I think you would be doing a disservice because you would be ignoring the light of the intentions of the parties. And it's very clear. It's a barometer. It's an objective barometer. It's not something that can be made up later and say, whoa, I made a mistake or anything like that. It's a contemporaneous barometer. And it's the part that really has to be considered, too. It's very clear. And I think this is just linguistic gymnastics, if I can get back to it. I really do. This is, you know, it's off count. It's on count. It makes the offer of judgment very difficult when it's a rule designed to promote settlements. It seems to me that it's just a span, much more contentious litigation from the offer of judgment. And I think this kind of argument that's being made here, where a $55,000 offer was made two months after a demand of $120,000 was put on this case for everything, okay, and then it turns into, oh, I got you. I got, now I'm entitled to $350,000. This just illustrates the injustice of this type of proceeding. Not to mention things that we haven't talked about, which is? Where in the record can you show us that $125,000 covered not only Mr. Lima's damages, but also all the costs and attorney's fees? It was a statement that Mr. Aspin made to me directly, and it's in my affidavit to the district court, which he never denied. So he made that directly to me. That he would take $125,000? $120,000. $120,000 all in? Yeah. Attorney's fees, costs? Or $99,000 with an apology from the city of Newark. And that was two months before. Did they give the apology? It's not clear to me. Well, Judge, you know, I know you wanted to look at the merits of this case a little bit. No, no. You've been talking merits, but did they give the apology? No. City of Newark didn't. Well, I mean, that's the underlying case here. And I don't know, maybe it's a very, the case leaves a distaste in my mouth, more so for the actions that really happened here. And we really haven't gotten into it. But just, I'll give you a little bit of background. No, I'm just asking. No, no apology was made. Because if we're at this. That's a simple yes or no question. Thank you. Yes, Your Honor. One of the things we haven't talked about is the, what I called an invited error, but may very well be mislabeled. And I would think it was more appropriate to call it a quasi-estoppel kind of a claim. And that is the fact that the attorneys for the plaintiffs represented to the district court, that they were willing to accept either the $55,000 or the $55,000 plus attorney's fees, whatever way the judge came down on it. And I found that to be a little, you know, Judge Hochberg is faced with that language when she makes her decision. And believe me, it was before her because it was in my brief. What was the context where that binary statement was made? It was a letter to the district court talking about a discovery dispute after the offer of judgment had been made and accepted. But it was, the context was we don't need to go any further on this case because there's only two possible outcomes, $55,000 or $55,000 plus. And my client is willing to accept either one as ordered by the court. Because if they got $55,000 plus the attorney's fees, they go home happy. If they get $55,000 without the attorney's fees, they come here seeking relief. That's the context that was raised. Well, it doesn't say that. It says we were. Isn't that the most rational way to interpret that? No, I disagree. How can we say that's a waiver? I mean, waiver requires the intentional relinquishment of a known right. I'd say when you say that we are amenable to either outcome, it's not I'm amenable to getting $55,000 from the court and then I'm going to run to the Third Circuit. That doesn't mean that. It means I'm amenable to the outcome. That's what they said. But the judge had already made a ruling. No, no, no. That was before the judge made a ruling. That letter, that context was before Judge Hochberg made her ruling. Okay? She had that in my brief when we were arguing the argument to her, whether it's $55,000 or $55,000 plus, and I said, look, Judge Hochberg, the plaintiffs said they're amenable to either outcome. They'll take it and read the language of what they wrote. I didn't write it. It's in their letter, and it's in the appendix. It's in my appendix. Do you have any case supporting your argument on this issue? Well, I had a tough time, and I had a tough time because before you do that, can you give me the page? I saw the argument, and we looked, and we couldn't find any court agreeing that that would affect this case. Judge Abbasart? Answer that question, and then your time is up. But answer the question. S.A. 3, page 3 is my supplemental appendix, is their language. Judge Abbasart, there is one case out of New Jersey, Hewer v. Hewer 152 N.J. 226, in which describes a situation in which an individual is not permitted to, quote, blow both hot and cold, taking a position inconsistent with prior conduct, and that is Hewer v. Hewer 152 N.J. 226, New Jersey State Court. I didn't put it in my brief. I found it later, so I apologize for that. Thank you very much. Thank you, Judge. All right. Thank you. When he's finished, Mr. Lipseth, you come, too. I have a question to ask him that has nothing to do with this case, but I want you to hear that it has nothing to do. Not right now. Yeah. Just briefly, Your Honor, just to clarify, the question here is governed by an objective test. Of course, we had a subjective belief, but that subjective belief was based on our investigation of the case law, and our duty was not to ask Mr. Lipseth what he thought the offer meant. Our duty to our client was to ascertain how a court would interpret this offer, and that interpretation needs to be the same at the time we accept the offer and after trial. On the question of, and I should add, there's some harm to our client as a result of the district court's interpretation, as the retainer agreement here requires that he pay us one-third of fees if the court determines this to be a lump sum. We had advised our client, based on the case law, that if we would get, and again, we didn't think it was a close question. As counsel admitted, there's no case saying claim for relief includes costs. We advised our client that if we got attorney's fees, he would keep the full $55,000. If the court concluded it was a lump sum offer, we would have to take one-third, as is very common in public interest retainer agreements, and so, in fact, he got less, contrary to the advice we gave him on how we predicted the court would interpret the offer. On the question of the equities, we really do resist this idea that it was a gotcha, and I think one thing we have to remember is the defendants use this legal instrument for the avowed strategic purpose of putting plaintiff in a bind. They have every right to do that, but once they elect to use this device, they are charged with knowing how this device works, and it's true that prior to this offer, two months prior, we had talked about a $120,000 offer, but in the interim, and this is not fully developed in the record, but we took what we regard as devastating discovery of the defendants who, in our opinion, admitted liability. We were about to file for summary judgment under the case management order and do a pretrial order. Thus, it made perfect sense for the defendant to file his offer of judgment at that point before, in our opinion, we were going to prevail on some of the substantive counts on summary judgment after doing a lot more attorney fee work. Lock us in then rather than later, and the short of it is we couldn't be sure, but our duty as our client was to find out how the law would interpret the issue. On this claim of invited error, I think the context is important. First, we have, in every single filing with the district court, taken the exact same position that we take here. We never told the district court that she could interpret this offer any way than we argued before this court. The context of this binary choice we informed the magistrate about was simply this. The defendants wanted to take an independent medical exam of our client. We objected on the grounds that, in our view, there would be no trial. So if there were no trial and there were no damages, there was no need to subject our client to an IME. And so it's in that context that we said, no matter what happens, we will accept either offer by the either contingency by the district court, only to underscore that we will not come back here, try and vacate the offer, and go to trial. The case is over, magistrate judge. The district court did not see that, nor could the district court, in light of our voluminous briefing, have really believed that we were inviting her to rule differently than we asked this court to rule. Can I ask counsel to provide a 28-J letter on the issue where we were disagreeing about whether or not attorney's fees accrued to date up until the moment of the Rule 68 offer are folded into the calculation to determine what happens after trial? Yes, Your Honor. I have a tentative answer now, but I would prefer to put it in writing after some time. I'd appreciate that. Seven days, Your Honor? Yes. Or sooner. Okay. Thank you. And if counsel wishes, you're not required to, but if you wish, you're certainly free to respond. Okay. Thank you very much. Thank you. Thank you. Turn off the voice. I have one question, which has nothing to do. But you come listen, because I know I want to make it clear. I have no. No, that's all right, Mr. Sterling. You may not know, but he's Egyptian. That's all right. He's Egyptian. That's it. We'll hear the next case.